**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Konarski, husband; et al., ) | No. CIV 11-612-TUC-LAB |
| )  Plaintiffs, ) | **ORDER** |
| ) vs. ) | |
| ) City of Tucson, a body politic; et al., ) | |
| )  Defendants. ) | |
| ) | |

Pending before the court is the defendants' motion for partial summary judgment filed on May 31, 2012. (Doc. 22)

The plaintiffs in this case rent housing to low income tenants. (Doc. 1-6) The defendant, City of Tucson, is the local housing authority that administers the federal Section 8 housing program, which give rental assistance to low income families. *Id*. The individual defendants, Albert Elias, Peggy Morales, and Julianne Hughes, work for the City. *Id*. In May of 2010, the City vetted the plaintiffs' housing units and agreed to enter into housing assistance payment (HAP) contracts with the plaintiffs for the benefit of three prospective tenants. *Id*. In June of 2010, however, the City notified the plaintiffs that it was rescinding the HAP agreements. *Id*. On the basis of that rescission, the plaintiffs bring this action for breach of contract, bad faith, intentional interference with contract, intentional infliction of emotional distress, conspiracy, and violation of civil rights. *Id*. The action was originally filed in Pima County Superior Court, but it was removed by the defendants based on this court's federal question jurisdiction.

1    The defendants move for partial summary judgment pursuant to Fed.R.Civ.P. 56(c).
2 They argue the state law claims against the individual defendants must be dismissed pursuant
3 to the Arizona notice of claims statute, A.R.S. § 12-821.01.  They further argue the plaintiffs'
4 civil rights claim should be dismissed on res judicata grounds or, in the alternative, on the
5 merits.
6    Magistrate Judge Bowman presides over this case having received written consent from
7 all parties.  28 U.S.C. §636.
8    The court finds the plaintiffs' civil rights claim should be denied on the merits.  The only
9 federal claim having been resolved, the court will remand the action to the state court.  The
10 court does not reach the notice of claims issue.

Factual and Procedural Background

13   The plaintiffs are in the business of renting housing to low income tenants.  (Doc. 1-6,
14 pp. 4-5)  In May of 2012, three prospective tenants indicated their desire to rent from the
15 plaintiffs.  *Id*.  The plaintiffs submitted to the City of Tucson the paperwork necessary to apply
16 for federal Section 8 rental assistance on their behalf.  *Id*.  The City performed the necessary
17 housing inspections, and agreed to enter into housing assistance payment (HAP) contracts with
18 the plaintiffs.  *Id*.  On June 3, 2010, however, the plaintiffs were informed by letter that the City
19 was rescinding the HAP contracts.  *Id*.
20   There is, apparently, a long history of animosity between the parties.  In 2001, the City
21 sent the plaintiff, Frank Konarski, a letter stating "we will no longer initiate new [Section 8]
22 contracts with you due to the numerous complaints expressed by the tenants and the continuing
23 problems imposed on our staff."  (Doc. 23-2, p. 2)  The plaintiffs suspect the city rescinded the
24 HAP contracts in this case for similar reasons.  (Doc. 1-6, p. 11)
25   On November 24, 2010, the plaintiffs served four copies of their notice of claim with the
26 City Clerk.  (Doc. 1-6, p. 5)

1   The plaintiffs subsequently initiated this action by filing a complaint in Pima County 2 Superior Court. They filed an amended complaint on August 30, 2011, claiming breach of 3 contract, bad faith, intentional interference with contract, intentional infliction of emotional 4 distress, conspiracy, and violation of civil rights. (Doc. 1-6) On September 26, 2011, the 5 defendants removed the action based on this court's federal question jurisdiction, 28 U.S.C. § 6 1331. (Doc. 1, p. 2)

7   On May 31, 2012, the defendants filed the pending motion for partial summary 8 judgment. (Doc. 22) They argue the state law claims against the individual defendants, Albert 9 Elias, Peggy Morales, and Julianne Hughes, must be dismissed because the plaintiffs failed to 10 serve them personally with a notice of claim. *Id*. They further argue the plaintiffs' civil rights 11 claim must be dismissed either on res judicata grounds or on the merits. (Docs. 22, 37)

12   The defendants addressed the merits of the civil rights claim for the first time in the reply 13 brief. (Doc. 37) Accordingly, the court offered the plaintiffs an opportunity to file a sur-reply 14 addressing the issue. (Doc. 68); *see also* Fed.R.Civ.P. 56(f).

15   A hearing on the motion was held on November 26, 2012. (Doc. 60)

17   Standard of Review:  Summary Judgment

18   Summary judgment is appropriate "if the movant shows that there is no genuine dispute 19 as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. 20 Civ. P. 56(a). There is a genuine issue of material fact "if the evidence is such that a reasonable 21 jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 22 242, 248 (1986).

23   The initial burden rests on the moving party to point out the absence of any genuine issue 24 of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party has 25 the burden of proof at trial, that party carries its initial burden by presenting evidence showing 26 no reasonable trier of fact could find for the nonmoving party. *Calderone v. United States*, 799 27 F.2d 254, 259 (6th Cir. 1986); *United States v. Four Parcels of Real Property*, 941 F.2d 1428,

- 3 -

1438 (11th Cir. 1991). If the moving party does not have the burden of proof at trial, that party carries its initial burden either by presenting evidence negating an essential element of the nonmoving party's claim or demonstrating the nonmoving party cannot meet its burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Insurance v. Fritz*, 210 F.3d 1099 (9th Cir. 2000).

Once satisfied, the burden shifts to the nonmovant to demonstrate through production of probative evidence that an issue of fact remains to be tried. *Celotex,* 477 U.S. at 324. Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Thomas v. Douglas*, 877 F.2d 1428, 1430 (9th Cir. 1989).

When considering a motion for summary judgment, the court is not to make credibility determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Instead, the court should draw all inferences in the light most favorable to the nonmoving party. *Id.*

The court finds that summary judgment should be granted on plaintiffs' civil rights claim on the merits. The court does not reach the defendants' res judicata argument.

DISCUSSION: Civil Rights

The plaintiffs allege the City's decision to cancel the HAP contracts deprives them of their liberty right to pursue their chosen occupation in violation of due process. (Doc. 1-6, pp. 11-12)

The Fourteenth Amendment precludes the states from "depriv[ing] any person of life, liberty, or property without due process of law." "[T]he liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment." *Dittman v. California*, 191 F.3d 1020, 1031(9th Cir. 1999). This right, however, only protects against state action that works "a complete prohibition on the right

1   to engage in a calling, and not a sort of brief interruption." *Guzman v. Shewry*, 552 F.3d 941,
2   954 (9th Cir. 2009).

3   In this case, the City's decision to rescind the HAP contracts does not constitute a
4   complete bar against the plaintiffs' ability to pursue their livelihood as landlords. They are free
5   to rent to other tenants in the private housing market. They are free to participate in other
6   housing subsidy programs. The City's rescission might make it more difficult for the plaintiffs
7   to make their living, but it does not create an absolute prohibition. Accordingly, the plaintiffs
8   cannot establish a liberty interest in the HAP contracts that were rescinded by the City. *See,*
9   *e.g., Khan v. Bland*, 630 F.3d 519, 535 (7th Cir. 2010) ("[K]han cannot establish a liberty
10  interest in continued participation in the Section 8 program. . . ."); *see also Llamas v. Butte*
11  *Community College Dist.*, 238 F.3d 1123, 1128 -1129 (9th Cir. 2001) ("The decision to bar
12  Llamas from future employment with the District did not violate his due process rights.").
13  There is no genuine issue of material fact on this issue, and the defendants are entitled to
14  judgment as a matter of law.

15  The plaintiffs further allege the City's decision violates the Equal Protection Clause on
16  a "class of one" theory. (Doc. 1-6, pp. 11-12)

17  "The Supreme Court has recognized that an equal protection claim can in some
18  circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but
19  instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Gerhart*
20  *v. Lake County, Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011) (punctuation modified). "To
21  succeed on her 'class of one' claim, [the plaintiff] must demonstrate that the [defendant]: (1)
22  intentionally (2) treated [the plaintiff] differently than other similarly situated [applicants], (3)
23  without a rational basis." *Gerhart*, 637 F.3d at 1022.

24  In this case, the plaintiffs have produced no admissible evidence tending to prove the
25  City acted "without a rational basis." In fact, it appears that the rescission was based on the
26  City's perception that the defendant, Frank Konarski, is difficult to deal with. In 2001, Adolph
27  Valfre, Jr., then the City's administrator of housing assistance programs, penned a fairly detailed

- 5 -

1  summary of the reasons why the City had decided to no longer initiate new Section 8 contracts
2  with Konarski. (Doc. 23-2)  Among other things, Valfre cited "Mr. Konarski's unrelenting
3  verbal abuse and excessive demands on the Housing Authority's limited personnel resources
4  and time." (Doc. 23-2, pp. 4-7)  He further cited "numerous complaints by minority tenants,"
5  a 1994 Unlawful Housing Practices judgment, and a pattern of behavior constituting "abuse,
6  discrimination or harassment of clients, thereby denying a suitable living environment for
7  families living in assisted housing." *Id*.

8  The plaintiffs argue this letter is hearsay and therefore inadmissible. (Doc. 34, pp. 2, 6)
9  They are correct but only to a point. The letter would be hearsay if it were admitted to prove
10 the truth of the matter asserted, that Konarski acted poorly in the past. It would not be hearsay
11 if it were admitted to show why the City rescinded the HAP agreements, i.e., the agreements
12 were rescinded because the City's internal documents indicate that Konarski is very difficult
13 to deal with. *See, e.g., Vazquez-Valentin v. Santiago-Diaz*, 459 F.3d 144, 151 (1st Cir. 2006)
14 ("[O]ffered as an explanation for the personnel actions undertaken by the defendants rather than
15 for the truth of the personnel irregularities described in the documents, these documents are not
16 hearsay."). And, that is what the defendants have to show to shift the burden of production to
17 the plaintiffs to prove that an issue of fact remains to be tried. *See Celotex Corp. v. Catrett*, 477
18 U.S. 317, 323 (1986); *Nissan Fire & Marine Insurance v. Fritz*, 210 F.3d 1099 (9th Cir. 2000).

19 The plaintiffs allege in their complaint that the rescission was caused by "Defendant
20 Morales' 'personal vendetta'" but they present no admissible evidence in support of their
21 theory. (Doc. 1-6, p. 13); *see also Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th
22 Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for
23 summary judgment."). In their sur-reply, they argue the City has, in the past, contracted with
24 landlords who had been convicted of violent crimes. (Doc. 78, p. 15) Unfortunately, they
25 provide no evidentiary support for this assertion. They maintain they have an existing Section
26 8 tenant who has rented from them for the past 20 years. They do not explain, however, how
27 this fact supports their "personal vendetta" theory. This might be some evidence that the
28

- 6 -

1 plaintiffs are able to properly maintain their apartments, but it does not appear to have any
2 bearing on the City's decision to rescind the HAP contracts in this case. If the defendant,
3 Morales, had a personal vendetta against the plaintiffs, presumably she would have cancelled
4 all of the plaintiffs existing HAP contracts, not just the three new ones. The plaintiffs cannot
5 show the City acted without a rational basis. Accordingly, the plaintiffs have not shown there
6 is a genuine issue of material fact on this issue. The City is entitled to judgment as a matter of
7 law. *See, e.g., Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 237 (5th Cir. 2012) ("[T]he
8 Lindquists cannot show that the City Council acted irrationally when it denied their appeal.").

9      At the hearing, counsel for the plaintiffs argued that the defendants' actions violated the
10 plaintiffs' civil rights pursuant to 42 U.S.C. §§ 1981 and 2000d. These claims, however, do not
11 appear in the plaintiffs' amended complaint. (Doc. 1-6) The § 1981 clam appears in a
12 proposed second amended complaint, which was the subject of the plaintiffs' motion to amend
13 filed on August 6, 2012. (Doc. 35-1, pp. 12-15) The motion to amend was denied on
14 November 13, 2012. (Doc. 73)

15

16      <u>Remand</u>

17      This court has original jurisdiction over the civil rights claim pursuant to 28 U.S.C. §
18 1331. This court has supplemental jurisdiction over the state law claims because they arise from
19 the same case and controversy pursuant to 28 U.S.C. § 1367.

20      Where removal is based on a claim later dismissed, the court may decline to exercise
21 jurisdiction over the remaining claims after properly considering the competing virtues of
22 "economy, convenience, fairness, and comity." *Acri v. Varian Associates*, 114 F.3d 999, 1001
23 (9th Cir. 1997) (en banc); 28 U.S.C. § 1367(c)(3). Ordinarily, the balance of factors will point
24 to declining jurisdiction. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

25      In this case, the remaining claims present issues of state procedural and substantive law.
26 In the interest of comity, and in light of the state court's superior expertise on questions of state
27 law, the remaining claims will be remanded to the state court. Accordingly,

28

1  IT IS ORDERED that the defendants' motion for partial summary judgment filed on May 31, 2012, is GRANTED in PART. (Doc. 22) The defendants are granted summary judgment on the plaintiffs' civil rights claim.

The court declines to assert supplemental jurisdiction over the remaining state law claims, and therefore, the remainder of the motion is denied without prejudice.

The action is remanded to Pima County Superior Court.

All outstanding motions are denied as moot. (Docs. 42, 59, 66, 67, 72, 75, 83, 87)

The Clerk is directed to enter judgment accordingly.

DATED this 3rd day of December, 2012.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge

- 8 -